**NOT FOR PUBLICATION**

Signed: June 09, 2009



_____
**RANDALL J. NEWSOME
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re: | Case No. 08-43037 ND |
| RONALD ALBERT BITTNER, and KIMBERLEY CATHERYN BITTNER | Chapter 7 |
| Debtors. | |
| LOIS I. BRADY, Trustee, | Adv. Pro. No. 08-4255 |
| Plaintiff, | |
| v. | **FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW** |
| NORMA J. POHLMAN, | |
| Defendant. | |
| NORMA J. POHLMAN, | |
| Counterclaimant and Third-Party Claimant, | |
| v. | |
| RONALD ALBERT BITTNER, and KIMBERLEY CATHERYN BITTNER, Debtors, and LOIS I. BRADY, Trustee, | |
| Third-Party defendants and Counter-defendant. | |

    This chapter 7 adversary proceeding is before the court pursuant to an April 6, 2009 trial

1

on the merits of the trustee's complaint asserting entitlement to a two-thirds interest in certain real estate in her status as a bona fide purchaser under 11 U.S.C. § 544(a)(3), and the defendant's counterclaim and third-party claim to quiet title. The trustee also seeks to sell the property pursuant to 11 U.S.C. § 363(h). At the conclusion of that trial, the court issued a tentative ruling in favor of the defendant, and requested that the parties provide further briefing on the issues. After reviewing those briefs and the applicable law, the court reaffirms its tentative ruling, and finds in favor of the defendant on all issues [1]

**FINDINGS OF FACT**

The facts concerning this action are not disputed to any significant extent. Norma Pohlman has been an owner of 3415 Morningside Drive (hereafter referred to as "the property") in Richmond, CA since 1975. Her husband was a co-owner until his death in 1985. In 1998 this property, along with Ms. Pohlman's residence of 48 years at 3419 Morningside Drive and a few other properties, were transferred to a self-settled trust in which Ms. Pohlman was the trustee. Plaintiff's Exhibit 2. Ms. Pohlman's only sources of income are Social Security payments and the rents from the property. She owes more on her residence than it is worth. Her undisputed testimony is that without rent from the property (which is unencumbered), she will be unable to make her monthly mortgage payments and will lose her home.

In 1997 Ms. Pohlman rented the property to Ron and Kimberley Bittner, who are in no way related to her. Plaintiff's Exhibit 3. In about 2006, the Bittners expressed an interest in buying the property. They attempted to obtain financing, but to no avail.

In March of 2007, Ron Bittner drew up a purchase agreement for the property, which at that time had an appraised value of $570,000. This agreement was never executed. Plaintiff's Exhibit 4. At about this same time, the Bittners learned from an unidentified loan officer that financing might be available if the property was converted into a joint tenancy, with the Bittners

---

[1] On October 22, 2008, the Bittners filed an answer to Ms. Pohlman's third-party complaint in which they admit all of the pertinent allegations set forth therein. Accordingly, judgment will enter against the Bittners on Ms. Pohlman's quiet title action against them.

2

and Norma Pohlman, as trustee of the Norma Pohlman 1998 Trust, each holding an undivided one-third interest. On March 19, 2007, this arrangement was memorialized by the filing of a grant deed transferring the property from the trust to the three parties as joint tenants. The grant deed recites that the transfer was a gift to the Bittners. Plaintiff's Exhibit 1. But the evidence is undisputed that none of the parties intended that a two-thirds interest in the property be given to the Bittners for no consideration. The sole purpose of the transaction was to increase the likelihood of the Bittners obtaining financing to purchase the property.

Unfortunately, this gambit did not work, as the Bittners were still unable to obtain a loan. Mr. Bittner owned his own business, and his creditworthiness was devastated by, among other things, the filing of ten federal tax liens between September 28, 2006 and February 2, 2008 [2] totaling over $100,000. Two of these liens, totaling over $35,000, were filed before March 19, 2007. Plaintiff's Exh. 8. All of the tax liens were filed in Contra Costa County, the county in which the property is located. Plaintiff's Exhibits 7 and 8. Ms. Pohlman had no knowledge of the Bittners' desperate financial straits until sometime in March or April of 2008. The Bittners were still living at the property as of June 14, 2008, the date they filed their chapter 7 case.

## OPINION AND CONCLUSIONS OF LAW

The facts of this case require the court to decide two principle issues: first, whether the undivided two-thirds interest in the property sought by the trustee is held by the Bittners in a resulting trust for the benefit of Ms. Pohlman; and second, assuming that it is held in a resulting trust, whether California law would deem the trustee to have constructive notice of the trust, thus defeating her status as a bona fide purchaser under § 544(a)(3).[3] In resolving these two issues,

---

[2] On August 18, 2008, the Internal Revenue Service filed a proof of claim in the Bittners' bankruptcy listing $173,458 in secured debt, $63,541 in unsecured priority debt, and $7,099.29 in general unsecured debt. Plaintiff's Exhibits 7 and 8.

[3] "Under section 544(a)(3) of the Bankruptcy Code, a bankruptcy trustee takes free of any interest in real property that could be avoided by a bona fide purchaser, whether or not such a bona fide purchaser actually exists." *In re Sale Guaranty Corp.,* 220 B.R. 660, 665 (9th Cir. BAP 1998), *aff'd,* 199 F.3d 1375 (9th Cir. 2000).

3

the court notes the basic proposition that "[t]he powers of a bona fide purchaser of real property are defined by state law." *In re Seaway Express Corp,* 912 F.2d 1125, 1128 (9th Cir. 1990).

The law of resulting trusts in California is straight-forward:

> "[a] resulting trust arises from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest." It has been termed an "intention-enforcing" trust, to distinguish it from the other type of implied trust, the *constructive* or "fraud-rectifying" trust. The resulting trust carries out the inferred intent of the parties; the constructive trust defeats or prevents the wrongful act of one of them. *American Motors Ins. Co v. Cowan,* 127 Cal.App. 3d 875, 179 Cal.Rptr.747,752 (1982)(citations omitted); *accord* B.E. Witkin, *Summary of California Law,* Trusts § 297 at 1131-32 (9th Ed. 1990).

*Quoted in In re Sale Guaranty Corp.,* 220 B.R. 660, 664 (9th Cir. BAP 1998), *aff'd,* 199 F.3d 1375 (9th Cir. 1992).

The evidence amply supports the conclusion that the Bittners hold the property in a resulting trust for the benefit of Ms. Pohlman. The transfer into a joint tenancy was never intended to confer a beneficial interest upon the Bittners. Rather, it was intended to enhance the possibilities that the Bittners would be able to secure a loan to purchase the property. No money changed hands, and no gift was intended. In keeping with the parties' real intent, the court finds in favor of the defendant as to this issue.

The question then becomes whether based on all of the facts and circumstances extant at the time of the debtors' bankruptcy petition, the trustee had constructive notice[4] of this resulting trust, thus preventing avoidance of that interest. Constructive notice is defined by Cal. Civil Code § 19 as follows:

> Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned of such fact.

---

[4] Under California law a purchaser's bona fide status is destroyed either by actual or constructive knowledge. For purposes of § 544(a)(3), however, the trustee's actual knowledge is irrelevant. *In re Weisman,* 5 F.3d 417, 420 (9th Cir. 1993); *In re Probasco,* 839 F.2d 1352, 1354 (9th Cir. 1988)

4

This statute has been interpreted uniformly as prescribing a "prudent purchaser" test, i.e. "someone who is shrewd in the management of practical affairs and whose conduct is marked by wisdom, judiciousness, or circumspection. . . . In this connection, he is charged with knowledge of information that a reasonable inspection of the property would have revealed. . . .Whether the circumstances are sufficient to require inquiry as to another's interest in property for the purposes of section 19 is a question of fact, even where there is no dispute over the historical facts." [citations omitted]. *In re Weisman,* 5 F.3d 417, 420-421 (9th Cir. 1993).

The trustee correctly asserts that certain facts do not, in and of themselves, impose a duty to look beyond the official record of the property's title. For example, joint ownership in and of itself does not impose a duty to inquire whether there are unrecorded interests. *Caito v. United California Bank,* 20 Cal 3d. 694, 702, 576 P.2d 466, 144 Cal.Rptr. 751 (1978). It is also true that "[i]f the actual possession is consistent with the record title, it will be presumed to be under that title and referable thereto." *Schumacher v. Truman*, 134 Cal. 430, 432, 66 P. 591 (1901).

But the Bittners possession of the property as of the date of bankruptcy and their status as joint tenants does not end the matter. As was noted in *Weisman, supra:*

> California courts have not only looked to whether possession was technically inconsistent with title, but have also *made a common-sense examination of whether the facts and circumstances of a particular case created a sufficient probability of inconsistency to create a duty to inquire*.

5 F.3d at 422 (italics added).

The trustee is not only charged with knowledge of official records, but the contents of the petition itself. After all, "[t]here is no practical reason why a trustee should not be put on inquiry notice by the very petition that created his position." *In re Professional Inv. Properties of America,* 955 F.2d 623, 628 (9th Cir. 1992), *cert. denied,* 506 U.S. 818 (1992).

Other than the property being held in joint tenancy, with only two of the three joint tenants living in the house, what other information would have been chargeable to "someone shrewd in the management of practical affairs?" Such a person surely would have noticed that prior to March 19, 2007, the property was held free and clear of liens by Ms. Pohlman, but the

5

Case: 08-04255    Doc# 18    Filed: 06/09/09    Entered: 06/09/09 19:24:55    Page 5 of 8

property was transferred to Ron Bittner as a joint tenant straight into the teeth of two federal tax liens against all of his property. Such a purchaser also would have seen that eight more federal tax liens were filed thereafter, but that the IRS had done nothing to execute on those liens prior to bankruptcy, even though it had many months to do so.[5]

The purchaser's examination of the grant deed would have disclosed that the conveyance of the property into joint tenancy was a gift to the Bittners, and that this total lack of consideration was "grossly disproportionate" to the value of the property interest being transferred. *See In re Thomas,* 147 B.R. 526, 530 n.6 (9th Cir. BAP 1992), *aff'd,* 32 F.3d 572 (9th Cir. 1994), *cert. denied,* 513 U.S. 1079 (1995); *see also Asisten v. Underwood,* 183 Cal.App.2d 304, 310, 7 Cal.Rptr. 84 (1960)*; Rabbit v. Atkinson*, 44 Cal.App.2d 752, 757, 113 P.2d 14 (1941); *Bernstein v. Pacific States Savings & Loan Co.,* 19 Cal.App.2d 679, 700-01 66 P.2d 699 (1937).

Although our hypothetical purchaser would not have seen the schedules as of the instant the case was filed (*In re Deuel*, 361 B.R. 509, 515 (9th Cir. BAP 2006)), the petition itself revealed that notwithstanding the Bittners' two-thirds undivided interest in the property, they listed their assets as being worth only "$0 to $50,000." Plaintiff's Exh. 5.

None of these facts, standing alone, might be sufficient to trigger a purchaser's duty to inquire. Taken together, however, they would arouse in a prudent purchaser sufficient suspicion

---

[5] A federal tax lien under 26 U.S.C. § 6321 extends to "all property and rights to property, whether real or personal [belonging to the delinquent taxpayer]." *U.S. v. Barbier,* 896 F.2d 377 (9th Cir. 1990). The statutory language is very broad, and even encompasses after-acquired property. *U.S. v. McDermott,* 507 U.S. 447, 448, 113 S.Ct. 1526 (1993). However, what constitutes property of a taxpayer to which a federal tax lien attaches is governed by state law. *U.S. v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054 (1958); *In re Kimura,* 969 F.2d 806, 810 (9th Cir. 1992). The fact that the IRS apparently did not file an action in U.S. District Court under 26 U.S.C. § 7403 to foreclose on its liens on an otherwise unencumbered piece of property would raise a number of issues for a prospective purchaser, not the least of which was whether the Bittners really owned a two-thirds interest in the property. Significantly, Ron Bittner testified that around April of 2008, an agreement was reached with the IRS to release the property from the federal tax liens so long as the Bittners weren't living on the property and Ms. Pohlman "had someone in escrow."

to require further inquiry, and that inquiry would have disclosed that the Bittners held the property in a resulting trust for the benefit of Ms. Pohlman. Accordingly, the court finds that the trustee had constructive notice of the resulting trust, and thus did not have bona fide purchaser status under 11 U.S.C. § 544(a)(3). Judgment shall enter in favor of the defendant on all claims.

–END OF ORDER–

| | |
|---|---|
| 1 | COURT SERVICE LIST |
| 2 | |
| 3 | Joanne M. LaFreniere |
| | Stromshiem and Associates |
| 4 | 201 California St. #350 |
| | San Francisco, CA 94111 |
| 5 | |
| | Leonard H. Watkins |
| 6 | Law Offices of Genser and Watkins |
| | 125 Park Place #210 |
| 7 | Richmond, CA 94801 |
| 8 | Ronald and Kimberley Bittner |
| | 1950 Sunshine Drive |
| 9 | Concord, CA 94520 |
| 10 | Office of the U.S. Trustee |
| | 1301 Clay St. #690N |
| 11 | Oakland, CA 94612 |

8